FÉLIX R. CARR, ETC., Plaintiffs and Appellants, *v.* ADOLFO NONES, JR., Defendant and Appellee.

No. R-68-170.     Decided January 7, 1970.

*Benicio Sánchez Castaño, Benicio Sánchez Rivera, Ana R. Rodríguez Olazagasti,* and *Gustavo A. Del Toro Bermúdez* for appellants.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The stipulated and accepted facts are as follows:

1. Defendant and appellee Adolfo Nones, Jr., made a loan in the Banco de San Juan for the amount of $2,501.49. To obtain said loan, Nones obtained the signature of plaintiff-appellant Carr and a third person, and all were bound with

the bank as joint debtors. Carr only acted to facilitate the obtention of the loan by Nones, he did not have personal or pecuniary interest in obtaining the same, and was not benefited in any manner with the transaction.

2. When Nones stopped paying, the bank sued Carr and attached his property. Carr paid the totality of the debt, in the sum of $2,872.48.

3. In this suit Carr sued Nones to recover what he had paid. The trial court, applying § 1098 of the Civil Code, 1930 ed., rendered judgment punishing Nones to reimburse Carr the third part, $957.49, with interest from the date Carr paid the debt to the bank.

At the request of Carr we issued a writ of review.

Appellant raised the litigious question on the ground that, pursuant to the stipulated and accepted facts, he was one of Nones' sureties, entitled to recover the totality of what he had paid to the bank, pursuant to § 1737 of the Civil Code, 1930 ed.

Appellee defended himself on the ground that Carr was a joint debtor in the obligation, and that the provisions of § 1098 of the same Code was applicable to him. Let us see:

Section 1098 of the Civil Code, 1930 ed., provides under the Fourth Article of Chapter III of Title I of the Fourth Book, said fourth article referring to several and joint obligations:

"The payment made by any of the joint debtors extinguishes the obligation.

"The person who made the payment can only claim from his codebtors the shares pertaining to each one with interest on the amounts advanced."

In defining the security contract, in § 1721 of the Civil Code, 1930 ed., it is prescribed that:

"By security a person binds himself to pay or perform for a third person in case the latter should fail to do so.

"If the surety binds himself jointly with the principal debtor, the provisions of Article IV, Chapter III, Title I of this Book, shall be observed."

Section 1729 provides that a surety cannot be compelled to pay a creditor until application [*sic*] has been previously made of all the property of the debtor, but the application cannot take place, "if he has jointly bound himself with the debtor," according to the second paragraph of § 1730.

Section 1736 prescribes that should there be several sureties but only one debtor for the same debt, the liability therefor shall be divided among them all, and the creditor can claim from each surety "nothing but the proper portion which he may have to pay, unless the joint liability has been expressly stipulated."

Pursuant to § 1737 which follows, a surety who pays for a debtor shall be indemnified by the latter, and the indemnity consists of: 1. *The total amount of the debt.*

By virtue of such payment the surety is subrogated in all the rights which the creditor had against the debtor, as § 1738 reads; and

Finally, and pursuant to § 1743, when there are two or more sureties for the same debtor, and for the same debt, the one who has paid it "may demand of each of the others the part which he or they should proportionally have paid."

So far the applicable provisions of the Civil Code.

The distinction made by the Code of the joint debtor and the surety, as well as the juridical effects which result from one or the other position are clear.

There is, however, a third intermediate eclectic figure, which as a question of fact and of law partakes at the same time of the nature of the joint debtor and the surety.

This intermediate figure is the joint-surety. Our law, as well as that of Spain, has recognized it. Already in 1908 it is mentioned in *Salgado* v. *Villamil et al.*, 14 P.R.R. 437, 448. Jacinto Texidor referred to it in this manner in *Succrs. of*

*P. Millón & Co.* v. *Caamaño et·al.,* 38 P.R.R. 174, 179–180 (1928):

"It has been assigned that the court erred in holding· defendant García to be a joint surety of the obligation sued on.

".      .      .      .      .      .      .      .

"It is said in the document presented:· 'We promise to pay jointly and severally . . . etc.'

"This form of establishing the obligation is nothing else than the expression of solidarity, of the constitution of the liability *in solidum,* as regards the debtors, and giving to the creditor the special rights and powers of this kind of obligation, among them, that of claiming fulfilment by any one of the obligors in the whole amount. This is why securities in which the surety accepts the condition of solidarity *are almost confused* with the ordinary joint obligation, for in such cases the surety loses the right of excussion of property of the principal debtor. Sec. 1732, Civil Code.[*] If in these cases the surety *should not preserve with respect to his trust some of the special rights created by the security contract,* it might be thought that those obligations with the note of solidarity had not the character of securities.

"The Code *considers* the status of the *surety in solidum* so much like that of the *debtor* of the same class that the second paragraph of section 1723 of it orders the observance of the provisions of section four, Chapter third, Title first of Book four which refers to joint and several obligations. In *Santiago* v. *Ares,* 25 P.R.R. 448 [*sic*], this court held that section 1111 of the Civil Code [**] is applicable to sureties *in solidum.*" (Italics ours.)

In the Spanish doctrine this intermediate or eclectic figure of "joint-surety" is admitted. José Castán observes:

"This last character, [subsidiary] which is normal in the security, is not, however, *essential,* since the scientific doctrine admits that a surety may, *without losing his function as such,* bind himself jointly with the debtor. It is true that, in our law,

---

* Section 1730, 1930 ed.
** Section 1097, 1930 ed.
"A creditor may sue any of the joint debtors or all of them simultaneously."

the second paragraph of § 1.822 establishes that if the surety binds himself jointly with the principal debtor, the provisions in the section relative to the joint obligations will be observed; what seems to indicate that in such case the surety will be considered as a principal debtor, bound *in solidum*. But it may happen that *the intention* of the contracting parties is that the surety does not become a mere principal debtor, *but that he should preserve his character as surety although being jointly bound with the debtor*. And the Supreme Court admits *the efficacy* of this contractual modality, in saying that, 'since the security consists in the obligation to fulfill the obligations contracted by a third person in the case that the latter does not fulfill them, it is fitting that the surety binds himself jointly with the principal debtor *without the contract losing its own nature therefor.*' (Judgment of December 29, 1898.)" (This last italics by the author.) IV *Derecho Civil Español, Común y Foral* 684–685, 9th ed. 1961.

Manresa expresses himself also in this manner:

"Our Supreme Court has declared also, by judgment of December 29, 1898, 'since the security consists in the obligation to fulfill the obligations contracted with a third person in the case that the latter does not fulfill them, it is fitting that the surety binds himself jointly with the principal debtor, *without the contract losing its own nature therefor.*'" (Italics by the author.)

And Manresa comments:

"Therefore, if from the terms of the contract or the expression of the third person's will it results that *his intention was not to become a mere principal debtor,* but to become only a surety, *although binding himself jointly with the former without losing therefor his character as such,* the claim against him can certainly be made, however, by effect of said solidarity without previously making excussion of the surety's property; but once the payment is made, he will have all the rights inherent to the surety, and will not be subject to the limitations which are proper of the joint codebtor. The distinction only has practical transcendency as to the effects of the internal relation, that is, between the obligors, and not before the creditor, because the joint obligation may be consistent with the most different rela-

tions between debtors, and such relations influence in the configuration and scope of the right of recovery between one and the others. But when the character of surety of one of the joint debtors is known, it is evident that he preserves against the other debtor all the rights which the positive regulation of the security contract attributes to the surety against the principal debtor. (Pérez and Alguer, p. 465.) In such sense the judgment of April 21, 1931." XII *Comentarios al Código Civil Español* 178, 5th ed. 1951. (Italics ours.)

Our Civil Code does not establish the intermediate figure of the "joint-surety." However, it recognizes it in several of its sections. In the second paragraph of § 1721 which defines the security contract; in paragraph 2 of § 1730 about excussion properties; in § 1736, all referring to security.

In *Hernández* v. *Delgado*, 31 P.R.R. 541 (1923), in a situation of facts similar to the instant one in which a joint indorser of a promissory note payable to the Banco Territorial y Agrícola for $700 and who paid the Bank, sued afterwards the principal debtor to recover the payment in his condition as surety invoking the right of indemnization which § 1737, 1930 ed., grants him, we said at pp. 542–543:

"The second assignment of error is that appellant was adjudged to pay the whole of the debt.

"There is no question in this action of the legal relationship between the plaintiff and the creditor, but of that which arose between the plaintiff and defendant Pedro Delgado by reason of the facts stated; and in view of the fact that the plaintiff signed a joint obligation in favor of the creditor without receiving any benefit and only to accommodate Pedro Delgado, it follows that there existed between them the relationship of surety and principal, because Hernández trusted Delgado to pay the said obligation and believed that in case he should have to pay it himself Delgado would reimburse him."

In the foregoing *Hernández* case the provisions of the second paragraph of § 1721 are not discussed in the opinion nor considered therein. Said section defines the security contract to the effect that:

"If the *surety* binds himself jointly with the principal debtor, the provisions of article IV, Chapter III, Title I, of this Book, shall be observed."

and in said Art. IV the above-copied § 1098 is included.

We examined the original record of the appeal in that *Delgado* case, and neither do the parties mention nor discuss in their briefs the foregoing provision of the second paragraph of § 1721. The point was not under the consideration of this Court, nor was it under the consideration of the trial court. We affirmed therein the judgment appealed from which punished Delgado to reimburse plaintiff $861.54, the total amount of the note plus interest.

A case identical with the instant one as to the facts is that of *Hughart v. Estate of Hamill*, 15 P.R.R. 289 (1909). Three persons had bound themselves jointly in a promissory note in favor of the American Colonial Bank for $750, but only one of them, Hamill, benefited from the loan, having the other two sign it to help him to obtain the same. One of the joint indorsers, Hughart, paid the total amount of the loan to the bank, and later brought an action claiming from the Estate of Hamill the total reimbursement of the amount paid. The then District Court punished Hamill to pay Hughart one-third of the amount paid, $250, applying § 1112–§ 1098, 1930 ed. We said: (p. 291)

"It is supposed that the plaintiff, Hughart, who, as joint debtor, paid the bank, now claims from the creditor Estate of Hamill, which is likewise a joint debtor, the full amount of the indebtedness, whereas, the joint debtors appearing on the bond being three, *only one-third* of the sum paid by Hughart to the bank can be recovered from the Estate of Hamill. This is not so.

"No account whatsoever should be taken here of the nature of the obligation contracted with the Colonial Bank. We know already that it is a joint obligation."

Upholding that the complaint was grounded in that Hughart had been a surety, and that it had been thus proved, we reversed the judgment which condemned to reimburse only

one third, and ordered that plaintiff recover the whole amount of the $750 with interest since the loan was satisfied.

As in the *Delgado* case, *supra,* this Court did not discuss, or construe, the 2nd paragraph of § 1721, nor § 1098.

The decision in *Hamill* was followed in principle in the case of *Cintrón & Aboy* v. *Solá,* 22 P.R.R. 245 (1915), only that in the latter the creditor sued the joint-surety. It was raised as defense *against the creditor,* that defendant had only been a surety. We rejected such defense, on the ground of the obligation *in solidum* which Solá had with the creditor on account of his signature as joint debtor.

Likewise the doctrine in Hughart was followed in *Crédito y Ahorro Ponceño* v. *Beiró et al.,* 32 P.R.R. 752 (1924), but as in the *Aboy* case, a complaint of the *creditor* against an indorser as joint debtor who alleged being only a surety was involved herein.

In *Pérez* v. *Santiago Bros. et al.,* 37 P.R.R. 15 (1927), the same situation of joint debtors, but who acted as sureties or accommodation makers for the beneficiary of the loan, was involved.

Different from the case at bar, therein a joint debtor sued the other joint debtor, that is a surety sued the other surety, to recover half of what he paid when the loan was not satisfied by the beneficiary debtor of the same. The codebtor defended himself on the ground that the obligation was solidary and that each one of the makers was exclusively responsible.

We rejected that argument and affirming the judgment which punished the cosurety to reimburse half of the amount to the other surety, we said that there was no evidence of the relations of the cosigners between *themselves;* that our Code shows that under civil law the relations of *the parties among themselves* may be different from that displayed in some written instrument signed by them, and that the joint

238

debtors could collect one from the other the amount owed, pursuant to § 1112 of the Civil Code, § 1098, 1930 ed.

In the case at bar the record and the admitted facts produce the atypical figure of the "joint-surety". Carr signed the note only to allow or accommodate Nones' obtention of the loan. In this case Carr was the accommodation party defined in § 382 of the Commerce Code, 1932 ed. (§ 30 of the Uniform Negotiable Instruments Act, Act No. 17 of 1930).[1]

In accordance with the stated doctrine, Carr was a joint debtor as to the creditor Banco de San Juan, liable to the latter for the total amount of the debt and without the latter previously having the benefit of levy with regard to Nones' property. But that does not destroy the true relation of surety between Carr and Nones, insofar as the rights between themselves are concerned.

Our past decisions have followed the rule of the Spanish doctrine, and in situations identical with these they have reimbursed to the "joint-surety" the total amount paid by him when he has claimed that reimbursement from the person he is being surety for, or debtor, sole beneficiary in the transaction. It is true that the second paragraph of § 1721 refers the situation to the provisions of Article IV of Chapter III of Title I of Book IV of the Civil Code, which includes a series of provisions which regulate joint and several obligations, but the Code does not refer directly to § 1098, although this is one of those included in said article. Harmonizing this section with those in relation to the security so that they all have effect and none loses its efficacy, before the actual set of facts it may be said that the reference of

---

[1] Section 382:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a *holder* for *value*, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

the 2d paragraph of § 1721 is directed to situations between the *creditor* and the *debtors*, and not to relations between the surety and the person he becomes surety for. Although without analyzing it, we have thus applied the law in our past cases, and it has been thus applied by the Supreme Court of Spain.

There are other considerations in order for that to be the most acceptable rule. From the point of view of equity, there is no reason why the total beneficiary of the transaction, who cannot pay at the proper time and his "joint-surety" pays, be benefited once more if in the future he were in a good economical condition, in not forcing him to reimburse the surety the totality of the amount paid in his benefit, but only a part. It would be to reward the beneficiary once more for his noncompliance.

In the second place, when we decided the cited cases, the figure of the "joint-surety" was rather an extemporaneous thing. Today it plays a great role in our economy and daily transactions, as it is the person, who, without benefiting, allows that loans be granted annually for millions of dollars. A factor which induces the "joint-surety" to accommodate the transaction lending his signature of accommodation, without benefiting in any manner, is his hope that if the principal debtor or person he becomes surety for, does not pay, he may recover totally in due time. On the other hand, it is known that in the actual commercial practices no credit institution grants a personal loan if the surety at the same time does not bind himself jointly with the creditor.[2]

---

[2] In order to see the importance of this figure of "joint-surety" and the magnitude of his intervention in the economy, note the following data:

1. During the last 5 fiscal years, on June 30, 1969, the Puerto Rico Commonwealth Employees Association granted to public employees—only a small part of our economy—personal loans for a total amount of $282,883,458 as follows: 1964–65, $49,883,244; 1965–66, $53,088,620; 1966–67, $56,659,719; 1967–68, $59,950,895; and in 1968–69, $63,350,980.

2. The Small Personal Loans Companies, loans which are not given

On the foregoing grounds the judgment rendered by the San Juan Part of the Superior Court on May 3, 1968 will be modified so that defendant Adolfo Nones, Jr., be ordered to reimburse to plaintiff Félix R. Carr the amount of $2,872.48 paid by the latter to the Banco de San Juan, with the interest of the advance payment since the date on which the payment was made, and thus modified, it will be affirmed.

Mr. Chief Justice Negrón Fernández, Mr. Justice Rigau, and Mr. Justice Torres Rigual did not participate herein.

without a joint-surety, granted for the year ended in December 1965, $27,876,200; and for the year ended in December 1966, $39,899,800. In the year ended in December 1967 they granted $48,998,000.

3. Banks loaned to persons during the last 5 years, with the intervention of the "joint-surety" in its great majority if not in its entirety, the amount of $1,060,842,000 as follows: $166,877,000 in 1964; $196,481,000 in 1965; $229,278,000 in 1966; $224,467,000 in 1967, and $243,739,000 in 1968. Parts of the Report of the Secretary of the Treasury, years 1967 and 1968; information submitted by the Executive Director and Secretary of the Puerto Rico Commonwealth Employees Association.